IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STEEL, PAPER & FORESTRY, )<br>RUBBER, MANUFACTURING, )<br>ENERGY ALLIED INDUSTRIAL & )<br>SERVICE WORKERS INTERNATIONAL )<br>UNION, )<br>        Plaintiff, )<br>)<br>    vs. )<br>)<br>NEVILLE CHEMICAL COMPANY, )<br>        Defendant. ) | Civil Action No. 06-640 |

## MEMORANDUM AND ORDER

Plaintiff, United Steel, Paper & Forestry, Rubber, Manufacturing, Energy Allied Industrial & Service Workers International Union (Union), brought this action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (LMRA), to enforce an arbitration award entered on January 19, 2006. The case arose out of Union member Gregory McCann's discharge by his employer, Defendant Neville Chemical Company (Neville), following two incidents at the workplace. The Union asserted that Neville was refusing to comply with the arbitrator's decision that McCann be reinstated to his former position, from which he was discharged on March 23, 2005.

On May 29, 2007, an order was entered (Docket No. 42), denying Defendant's motion for summary judgment, granting Plaintiff's motion for summary judgment and adopting a Report and Recommendation dated March 28, 2007 (Docket No. 35). Presently before the Court are Plaintiff's request for damages (Docket Nos. 47-49), Defendant's response thereto (Docket No. 51), Plaintiff's reply brief (Docket No. 53) and Defendant's sur-reply brief (Docket No. 55).

Plaintiff requests damages in the following amounts: backpay and other make-whole

remedies (including unemployment insurance for a period during which employees were locked out of the facility and the company's cost of hourly insurance benefits) from March 23, 2005 until December 4, 2006 (the date McCann returned to work) in the amount of $80,007.90, prejudgment interest from the date of the arbitration awards to the eventual date of payment at the rate of 4.95%, attorney's fees in the amount of $22,500.00 and costs in the amount of $462.24.  Defendant does not dispute the amounts submitted by Plaintiff, although it does contend that some of the requested amounts are not specific enough and are not supported by appropriate documentation.  In addition, it argues that McCann is not entitled to receive any damages for the following reasons.

Defendant argues that: 1) McCann is entitled to no damages because he could not be employed from March 23, 2005 until December 4, 2006 as a result of a permanent injury which rendered him disabled; 2) McCann failed to mitigate his damages by refusing to accept Neville's offers to "bump" him into a Forklift Operator position; 3) the claimed damages are too speculative; 4) McCann cannot receive unemployment compensation because he applied for it and his claim was denied and further litigation over this issue would violate the Rooker-Feldman doctrine; 5) he cannot receive Neville's cost of hourly insurance benefits, a cost he never incurred, because this figure also includes payroll taxes, workers' compensation payments, pension benefits and other costs; and 6) attorney's fees are inappropriate because Neville's conduct was reasonable, counsel guesses at the number of hours spent and did not submit an affidavit of hourly rates customarily charged in the relevant market, and counsel – who has only been in practice for two years – proffers the rates earned by 20-year practitioners.

McCann's Disability

Defendant argues that it should not be required to pay damages for a period during which McCann was disabled from performing the requirements of his former position (Senior Packager), specifically repetitive lifting of 50-pound bags of resin. Defendant notes that McCann's physicians concluded in 2005 that he could not perform this duty and that McCann stated at his workers' compensation hearing on August 25, 2005 that he believed he could not do so. (McDowell Dep. at 14, 17-18;[1] Kandabarow Dep. at 12-13;[2] Docket No. 20 Tab G (Proposed Findings Third, Eleventh).)

"As a general rule, [backpay] will not be allowed ... during any periods of disability." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1101 (3d Cir. 1995) (citation omitted). Thus, Defendant contends that McCann is precluded from receiving backpay because of his disability.

This argument was presented by Defendant in its motion for summary judgment. Specifically, Defendant argued that it could not reinstate McCann to his former position after the arbitration award was issued because he was unable to perform the physical requirements of the job, namely the repetitive lifting of 50-pound bags. The Court concluded that, by failing to raise this issue during the arbitration or even in a motion to vacate the arbitration, Defendant could not raise it in this proceeding. "In order to preserve the efficiency and integrity of the arbitral process, the Company ought to be, and therefore is precluded from relief from the enforcement of the arbitrator's order on the ground that [the employee's] reinstatement [was] not possible."

---

[1]    Docket No. 20 Tab E.

[2]    Docket No. 20 Tab F.

United Steel Workers of America, AFL-CIO, CLC v. Dayton-Walther Corp., Muncie Div., 657 F. Supp. 50, 55 (S.D. Ind. 1987). This conclusion also applies to the damages phase of the litigation. Therefore, this argument will not be considered.

Mitigation of Damages

Defendant argues that McCann failed to mitigate his damages by refusing to accept Neville's offers to "bump" him into a Forklift Operator position. Plaintiff responds that the issue of "bumping" McCann into a junior Forklift Operator position is irrelevant to this case.

Neville offered the Union and McCann the opportunity for him to "bump" into a junior Forklift Operator position on two occasions. First, in 2003, his position as a Sweeper Operator was abolished and he became a Packager. On August 7, 2003, he filed a grievance to "bump" into other positions, which was denied. On April 6, 2004, Neville offered to resolve this grievance without proceeding to arbitration by allowing him to "bump" into a junior Forklift Operator position, an offer to which McCann and the Union did not respond. (Pesce Decl. ¶¶ 3-5 & Exs. 1, 2.)[3]

These events predate McCann's injury (which occurred on May 19, 2004), the incidents that led to his discharge (which occurred on February 15 and February 20, 2005), the grievances resulting from the discharge (filed on March 15, 2005), the arbitration hearings held on the grievances (on October 18, 2005 and November 9, 2005) and the arbitration awards (January 19, 2006) that the Union brought this case to enforce. In addition, this issue was the subject of a separate grievance and is not being raised in this case. McCann's non-response to an offer to "bump" into the junior Forklift Operator position in 2004 does not demonstrate his failure to

---

[3]   Docket No. 20 Tab I.

mitigate damages in this case.

The second time the issue of allowing McCann to "bump" into the junior Forklift Operator position was raised was during settlement discussions that occurred after this case was filed. Neville states that, on September 22, 2006, it again made the offer to McCann and the Union and that it was never accepted or rejected. (Pesce Decl. ¶ 14.)[4]

This argument is rejected for two reasons. First, it is not clear that Defendant can introduce the fact that McCann and the Union did not respond to its offer into evidence. Federal Rule of Evidence 408 provides that:

> (a) Prohibited uses.--Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> > (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
>
> (b) Permitted uses.--This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

"Evidence that demonstrates a failure to mitigate damages goes to the 'amount' of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408." Pierce v. F.R. Tripler & Co., 955 F.2d 820, 826-27 (2d Cir.

---

[4] The actual letter making this offer is not part of the record.

1992). Moreover, "settlement offers do not trigger the duty to mitigate. There is no duty to surrender the claim in order to mitigate damages." Clevenger v. Bolingbrook Chevrolet, Inc., 401 F. Supp. 2d 878, 882 (N.D. Ill. 2005) (citations omitted).

Some cases have held that admitting evidence of settlement negotiations to prove or disprove mitigation of damages does not violate Rule 408 because its serves "another purpose" under the Rule. See, e.g., Bhandari v. First Nat'l Bank of Commerce, 808 F.2d 1082, 1103 (5th Cir. 1987); Urico. v. Parnell Oil Co., 708 F.2d 852, 854-55 (1st Cir. 1983). However, this Court finds more persuasive those cases that have observed that "[t]he goal of mitigation is the prevention of unnecessary economic loss, and therefore mitigation necessarily goes to the amount of the claim." Stockman v. Oakcrest Dental Center, P.C., 480 F.3d 791, 798 (6th Cir. 2007) (citations omitted). Moreover, mitigation of damages does not resemble in any way the examples provided in the Rule for "another purpose," namely: "proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

Thus, Neville should not be permitted to introduce McCann's failure to accept its offer to "bump" him into the junior Forklift Operator position, made during the course of settlement discussions in this case, as evidence of McCann's failure to mitigate damages. Moreover, even if this evidence were admissible, Neville could not meet its evidentiary burden.

An employee has a duty to mitigate damages, but it is the employer who bears the burden of demonstrating that the employee failed to mitigate. Robinson v. SEPTA, 982 F.2d 892, 897 (3d Cir. 1993). To prove that the employee failed to mitigate, the employer must prove that other substantially equivalent positions were available and that he failed to use reasonable diligence to

secure them.  Anastasio v. Schering Corp., 838 F.2d 701, 708 (3d Cir. 1988).  See also Aguinaga v. United Food & Commercial Workers Int'l Union, 993 F.2d 1463, 1474 (10th Cir. 1993) (employee's duty to mitigate damages in an LMRA case).

Defendant has not demonstrated that the junior Forklift Operator position was "substantially equivalent" to the position McCann held at the time of his discharge.  Indeed, it has not provided any information about this position.  Although Neville contends that McCann and the Union filed a grievance for him to "bump" into a Forklift Operator position in 2003, it has not demonstrated that its offers to "bump" him into a "junior Forklift Operator" position, made either in 2004 or September 2006, represented substantially equivalent positions.  Therefore, it has not met its burden of demonstrating that McCann failed to mitigate his damages by not accepting this offer.

### Damages too Speculative

Defendant contends that the claimed damages are too speculative because McCann could not perform the duties of the Senior Packager position, that he cannot receive unemployment compensation for the lockout period, that he cannot receive Neville's cost of hourly insurance and that he cannot obtain attorney's fees without evidence of hours spent or the basis for requesting $250 per hour.  This argument is merely a recombination of other arguments presented.  These arguments are discussed above and below.

### Unemployment Compensation

Plaintiff requests that McCann be paid unemployment compensation for the period of time during which a lockout occurred at the Neville facility, between July 31 and September 10, 2006.  Defendant argues that he cannot receive unemployment compensation because he applied

7

for it and his claim was denied and further litigation over this issue would violate the Rooker-Feldman doctrine.

Plaintiff responds that Arbitrator Elliot Newman's award clearly states that McCann be "made whole" for amounts he was not paid and that the award be offset by any amounts he did receive. Thus, just as he indicates that his damages should be reduced by the $12,142.00 he received in unemployment insurance during 2005, he argues that he should be made whole for the amount he would have received in 2006 had he been reinstated and had been working at Neville when the lockout occurred. In addition, McCann explains that he applied for these benefits but his application was denied because he did not have sufficient weeks of qualifying employment, which was the result of Neville's failure to reinstate him despite the directive of the arbitration award. (McCann Aff. ¶ 13.)[5]

Defendant has not disputed that, had Neville reinstated McCann as directed by Arbitrator Newman in the award, he would have earned sufficient weeks to have received unemployment compensation during the lockout. Because the award directed that McCann be "made whole" for amounts he was not paid and because his award will be offset by unemployment compensation that he did receive in 2005, Neville should pay him the unemployment compensation that he would have received had he been reinstated in 2006.

Employer's Cost of Insurance

Plaintiff seeks $16,061.12 that it contends are "lost health insurance benefits," but in fact the figure constitutes Neville's hourly cost of group insurance benefits. (McCann Aff. ¶ 15.) Defendant argues that McCann is not entitled to Neville's hourly rate of group insurance,

---

[5]   Pl.'s App. 1, Tab A (Docket No. 48).

because this is not a cost he incurred. The Union seeks this amount on the grounds that Neville will be "unjustly enriched" if it keeps this money.

As noted above, Arbitrator Newman's award directs that McCann be made whole for amounts he was not paid. The company's hourly rate of group insurance is not an amount McCann would have been paid had he been reinstated. Rather, it is a cost that Neville would have borne. Plaintiff provides no support for the argument that a company should pay an employee the hourly rate of its group insurance under an unjust enrichment theory. By contrast, Defendant has cited cases that specifically reject attempts to recoup such amounts. See Erie County Retirees Ass'n v. County of Erie, Pa., 166 F. Supp. 2d 313, 315 (W.D. Pa. 2001) ("Plaintiffs will not be permitted to present evidence regarding the County's cost of providing the [benefits]. This is an expense that the Plaintiffs themselves never incurred, and awarding it in addition to the expenses they in fact incurred would make them 'better than whole.'"); Berndt v. Kaiser Aluminum & Chem. Sales, Inc., 604 F. Supp. 962, 965 (E.D. Pa. 1985) ("Requiring Kaiser to reimburse plaintiff for the amounts it would have incurred in providing insurance coverage when no loss has been suffered by the plaintiff is not consistent with the 'make whole' policy of the ADEA.").

Plaintiff has not offered any evidence of costs incurred by McCann, only costs that Neville did not have to pay because he was not reinstated. It has not demonstrated that he is entitled to recover these amounts.

Attorney's Fees

Plaintiff seeks attorney's fees in the amount of $22,500.00 and costs in the amount of $462.24. Defendant argues that attorney's fees are inappropriate because its conduct was

9

reasonable, that counsel guesses at the number of hours spent and did not submit an affidavit of hourly rates customarily charged in the relevant market, and that counsel – who has only been in practice for two years – proffers the rates earned by 20-year practitioners.

"Under federal common law, a court may award fees and costs to the winning party in a section 301 action if the losing party's position was frivolous, unreasonable, or without foundation." Local 2322, Int'l Bhd. Elec. Workers v. Verizon New England, 464 F.3d 93, 100 (1st Cir. 2006) (footnote omitted).  See also International Union Petroleum & Indus. Workers v. Western Indus. Maintenance, Inc., 707 F.2d 425, 428 (9th Cir. 1983); Gulf & Western Mfg. Co. v. United Steelworkers of America, Dist. No. 9, 694 F. Supp. 38, 46-47 (D.N.J. 1988).

Plaintiff cannot demonstrate that Defendant's position – that it could not reinstate McCann to his former position because he was not physically capable of performing the duties of this job – was frivolous, unreasonable or without foundation.  This Court never reached the merits of the argument, but rather precluded Defendant from pursuing it on the ground that it had failed to raise it before the arbitrator.  Thus, Plaintiff has not demonstrated that it is entitled to receive attorney's fees and costs in this case.

<u>Calculation of Backpay Amounts</u>

On January 19, 2006, Arbitrator Newman issued separate, simultaneous Awards deciding the two pending grievances.  In his Award deciding Grievance #05-16, Arbitrator Newman determined that Neville "did not have proper cause ... to suspend ... McCann for three days for the incident on February 15, 2005," and directed that McCann be "made whole for three days

pay." (Award I at 8.)[6]

With respect to Grievance #05-15, Arbitrator Newman determined that "[p]roper cause existed to discipline [McCann] for failing on February 20, 2005 to follow instructions." However, as a result of the companion award relating to Grievance #05-16, Arbitrator Newman reduced the discharge to a "three day [suspension] without pay on March 20, 21 and 22, 2005 as the next step in progressive discipline." Arbitrator Newman also directed Neville to "reinstate" McCann with no loss of seniority and make him whole in terms of backpay and benefits, "minus" any unemployment compensation benefits he had received. (Award II at 5-6.)[7]

The parties agree that, after Arbitrator Newman issued his Awards, Neville reimbursed McCann for three days pay owing from his improper first suspension, which had been overturned by Arbitrator Newman in his decision on Grievance #05-16. Neville further reimbursed McCann for two days pay for the reduction in his second suspension from five days to three days as ordered by Arbitrator Newman in his decision on Grievance #05-15. Neville also reinstated McCann's health insurance benefits and seniority and paid him the balance due him for his 2005 vacation and holiday pay. (Def.'s Statement Undisputed Material Facts ¶ 27;[8] Pl.'s Resp. ¶ 27.[9])

Neville did not, however, allow McCann to return to work at this time. He did not return to work until December 4, 2006, when he was employed as a Production Trainee. He states that he subsequently bid for and successfully posted into another bargaining unit position, Waste

---

[6]   Docket No. 20 Tab C.

[7]   Docket No. 20 Tab D.

[8]   Docket No. 19.

[9]   Docket No. 33.

Water Treatment Pumper, which he currently holds.  (McCann Aff. ¶ 9.)

      Plaintiff submits evidence that McCann is entitled to backpay in the following amounts: 1) At the base rate of pay for a Senior Packager of $20.99 per hour (which applied from July 15, 2004 to July 15, 2005), with shift premiums of $.65 per hour for afternoon shifts and $.85 per hour for night shifts, he estimates that he would have worked 16 hours for the partial week of March 23-27, 2005, 15 full weeks at 40 hours per week for March 28-July 10, 2005 and 32 hours for the partial week of July 11-14, 2005, for a total of 648 hours, 216 on the day shift at $20.99 per hour (total $4533.84), 216 on the afternoon shift at $21.64 per hour (total $4674.24) and 216 on the night shift at $21.84 per hour ($4714.44) (total for this period $13,925.52).  (McCann Aff. ¶¶ 10-11.)[10]  See also Collective Bargaining Agreement, art. 4.3 & Schedule A.[11]

2) At the base rate of pay for a Senior Packager of $21.03 per hour (which applied from July 15, 2005 to July 31, 2006), with the same shift premiums noted above, he estimates that he would have worked 8 hours for the partial week of July 15-17, 2005 and 55 full weeks at 40 hours per week for July 18, 2005-July 31, 2006, for a total of 2208 hours, 736 on the day shift at $21.62 per hour (total $15,912.32), 736 on the afternoon shift at $22.27 per hour (total $16,390.72) and 736 on the night shift at $22.47 per hour ($16,537.92) (total for this period $48,840.96).  (McCann Aff. ¶ 12.)

3) At the base rate of pay for a Senior Packager of $21.13 per hour (which applied beginning September 11, 2006), with shift premiums as noted above, he estimates that he would have

---

[10]    McCann's affidavit states that the total of these three amounts is $13,925.42.  This appears to be a typographical or math error.

[11]    Docket No. 20 Tab A.

worked from September 11 to December 3, 2006 for a total of 480 hours, 160 on the day shift at $21.13 per hour (total $3380.80), 160 on the afternoon shift at $21.78 per hour (total $3484.80) and 160 on the night shift at $21.98 per hour ($3516.80) (total for this period $10,382.40). (McCann Aff. ¶ 14.)  See also 2006 Memorandum of Understanding ¶ 11.[12]

McCann has also submitted evidence that, from July of 2004 until March 14, 2005, he regularly worked 40 per week in rotating shifts over a three-week period, averaging 40 hours in total on days, 40 hours in total on afternoons and 40 hours in total on evenings.  (McCann Aff. ¶ 3; Pl.'s App. 1 Tab C.[13])  Thus, he has demonstrated a reasonable inference that he would have continued to work on average in these amounts.

The total for these three periods of time is $73,148.88.  Defendant has not responded to this evidence and therefore it is uncontested.

In addition, McCann seeks $2940.00 in unemployment insurance benefits for the lockout that lasted from July 31, 2006 to September 10, 2006 ($497.00 per week for approximately six weeks).  Plaintiff has submitted the affidavit of Ron Marino, a bargaining unit employee and President of Local 5032.  Marino states that Neville locked out the bargaining unit employees from July 31, 2006 until September 11, 2006, that he applied for and received unemployment insurance benefits in the amount of $2940.00 for the duration of the lockout and that he understands that other employees applied for and received benefits in the same amount.  (Marino

---

[12]    Pl.'s App. 3 (Docket No. 47).

[13]    Docket No. 48.

Aff. ¶¶ 1, 4-6.)[14]

Defendant contends that McCann cannot use Marino's receipt of unemployment compensation to argue what he would have received because Marino's amount resulted from a calculation including two employers, as opposed to McCann's single employer, that would be considered by the Bureau of Unemployment Compensation. Plaintiff responds that, according to Section 404(e)(1) of the Pennsylvania Unemployment Insurance Compensation Act, 43 P.S. § 804 (2006), the maximum weekly benefit amount of $497.00 is payable to any employee who earned at least $19,800.00 in qualifying wages and $12,363.00 in his highest qualifying quarter preceding his claim for unemployment insurance.[15] Based on McCann's collectively bargained rate of pay of $21.62 per hour plus shift premiums, the record supports the conclusion that, if he had been regularly working at least 40 hours per week prior to the lockout, as he had been prior to his discharge, he would have qualified for the maximum weekly benefit.

McCann acknowledges that Neville is allowed to offset McCann's make-whole amount by the unemployment insurance benefits he received in 2005, which amounted to $12,142.00.[16] The total of backpay and unemployment insurance benefits not paid in 2006, less the amount he did receive in 2005, is thus $63,946.88. (McCann Aff. ¶ 16.)

Plaintiff has demonstrated that McCann is entitled to backpay and unemployment insurance in the amounts requested (but not Neville's cost of hourly insurance or attorney's fees, for the reasons stated above). Therefore, he will be awarded $63,946.88.

---

[14]   Pl.'s App. 2, Tabs A, B, C, D (Docket No. 49).

[15]   Pl.'s Reply Br. (Docket No. 53) Attachment 1.

[16]   Pl.'s App. 1, Tab B.

Prejudgment Interest

Plaintiff also requests prejudgment interest.  Defendant has not responded to this request.  The LMRA does not state whether a prevailing party in a section 301 action may recover prejudgment interest.  Courts which have addressed this issue have held that the matter lies within the district court's discretion.  Colon Velez v. Puerto Rico Marine Mgmt., Inc., 957 F.2d 933, 941 (1st Cir. 1992); International Ass'n Bridge, Structural & Ornamental Iron Workers, Local Union No. 103, AFL-CIO v. Higdon Constr. Co., 739 F.2d 280, 283 (7th Cir. 1984); Oil, Chem. & Atomic Workers Int'l Union v. American Cyanamid Co., 546 F.2d 1144 (5th Cir. 1977).  The Supreme Court has noted that "[p]rejudgment interest is an element of complete compensation...."  West Virginia v. United States, 479 U.S. 305, 310 (1987).

The Court of Appeals has held that, although the postjudgment interest rate specified in 28 U.S.C. § 1961 does not by its own operation apply to prejudgment interest, it may be used as a guide in federal question cases.  Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 63 (3d Cir. 1986).  The statute provides that "interest shall be calculated ... at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).

Plaintiff requests interest at the rate of 4.95%, noting that this was the published rate as of May 25, 2007, the calendar week immediately preceding the Court's entry of judgment on May 29, 2007.  (Pl.'s App. 4.)[17]  Defendant has not responded to this argument.  Plaintiff requests that interest be imposed from January 16, 2006 to the eventual date of payment.  (Docket No. 47 at

---

[17]    Docket No. 47.

4.) However, Arbitrator Newman's awards were dated January 19, 2006. <u>See</u> Docket No. 20 Tab C at 8, Tab D at 6.

The Court will grant Plaintiff's request for prejudgment interest at the rate of 4.95% from January 19, 2006 to the date Defendant pays the judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ENERGY ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION,<br>       Plaintiff,<br><br>vs.<br><br>NEVILLE CHEMICAL COMPANY,<br>       Defendant. | Civil Action No. 06-640 |

O R D E R

AND NOW, this 31st day of July, 2007, in accordance with the foregoing Memorandum IT IS ORDERED that, pursuant to Federal Rule of Civil Procedure 58, judgment is hereby entered in favor of the plaintiff and against the defendant in the amount of $63,946.88, plus prejudgment interest at the rate of 4.95% from January 19, 2006 to the date of payment.


s/ Terrence F. McVerry
United States District Judge